UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREIA ROSA DOS SANTOS,<br><br>                              Plaintiff,<br><br>                    -v-<br><br>ASSURANT, INC.; FALCON SHIELD PROPERTY<br>PRESERVATION, LLC; and DOES 1 THROUGH 5,<br><br>                              Defendants. | 21 Civ. 6368 (PAE) (RWL)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Andreia Rosa Dos Santos brings claims under the Visual Artists Rights

Act of 1990, 17 U.S.C. § 106A(a)(3)(B) ("VARA") and New York tort law against defendants

Assurant Inc. ("Assurant"), Falcon Shield Property Preservation, LLC ("Falcon Shield"), and

five unnamed individuals for "trashing out" her original artwork.  On July 26, 2021, more than

four years after the alleged destruction occurred, Dos Santos filed the Complaint in this case.

Dkt. 2 ("Compl.").  On January 12, 2022, Assurant moved to dismiss for failure to state a claim

based on the three-year statute of limitations on Dos Santos's VARA claim, asked the Court to

decline to exercise supplemental jurisdiction over the state-law claims, and to dismiss all claims

with prejudice.  Dkt. 28 ("Def. Mem.").

On May 13, 2022, the Hon. Robert W. Lehrburger, United States Magistrate Judge,

issued a Report and Recommendation.  It recommended granting Assurant's motion in all

respects, except to dismiss the state law-claims without prejudice.  Dkt. 32 ("Report").  On May

25, 2022, Dos Santos, and on May 27, 2022, Assurant, filed objections to the Report.  Dkts. 33

("Pl. Obj."), 34 ("Def. Obj.").  On June 1, 2022, Assurant filed a response to Dos Santos's

objections.  Dkt. 36 ("Def. Resp.").

For the reasons that follow, the Court adopts the Report in its entirety.

## I. Background

### A. Factual Background

The Court adopts the Report's account of the facts and procedural history. The following summary captures the limited facts necessary to assess the issues presented.[1]

Dos Santos alleges the following. She is a Brazilian-born visual artist who has exhibited her work locally and internationally. Compl. ¶¶ 43–44; *id.*, Ex. F. Between 2009 and 2017, Dos Santos painted 171 watercolor paintings. Compl., Exs. 8, 9. On March 20, 2017, she was evicted from her home in Union, New Jersey. Compl. ¶ 29; *id.* Ex. C. That day, Falcon Shield, directed by Assurant, packed up Dos Santos's belongings located in her former home, including artwork, and moved them to a storage unit held in Assurant's name. Compl. ¶¶ 27–30; *id.*, Ex. C. Dos Santos was notified, by email, that the first 30 days of storage had been paid for by Assurant. She was further notified that she was responsible for changing the storage unit to her name, paying any applicable fees for storage beyond the first 30 days, and timely retrieving her belongings. *See* Compl., Ex. C. In the weeks after her eviction, Dos Santos applied for financial assistance from the New York City Human Resources Administration to cover storage fees. Compl. ¶¶ 31–32; *id.* Ex. A.

---

[1] The summary is drawn from the Complaint, Dkt. 2 ("Compl."), attached exhibits, Dkts. 2-1 to 2-11, Dos Santos's declaration in response to the Court's order to show cause, Dkt. 9 ("Dos Santos Decl."), Dos Santos's opposition to Assurant's motion to dismiss, Dkt. 23 ("Pl. Opp."), and Dos Santos's objections to the Report, Dkt. 33 ("Pl. Obj."). The Court considers the factual allegations contained in all these submissions, and gives special solicitude to Dos Santos, as she is prosecuting this action *pro se*. For the purposes of resolving the instant motion to dismiss, the Court presumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the Plaintiff. *See Koch v. Christie's Int'l*, 699 F.3d 141, 145 (2d Cir. 2012).

On April 19, 2017, at the expiration of the 30 days, Falcon Shield "trashed" Dos Santos's artwork, along with her other stored belongings, that had been in the storage unit. Compl. ¶ 31. Dos Santos claims that she did not receive any past due notice on her storage fees, *id.*, or any prior warning that her belongings were subject to removal after 30 days, *id.* ¶ 33. The same day, Dos Santos attempted—unsuccessfully—to call Falcon Shield to obtain a storage bill for the next 30 days. *Id.* ¶ 32; *see id.*, Ex. B (showing log for calls placed after 5 p.m.). On April 20, 2017, Dos Santos was able to reach a Falcon Shield employee. *Id.* ¶ 33. She was informed that the trashing out had been concluded, *id.*, with her property having been removed to a dump site, *id.* ¶ 35. The Complaint repeatedly alleges that, in "trashing out" Dos Santos's art, defendants "destroyed" *all* her artwork. *See, e.g., id.* ¶¶ 30, 33; *id.* ¶¶ 30 ("destroying all of her original Artworks"), 31 ("destroying all her original watercolor paintings"), 32 ("trashed the Artworks"), 33 ("destroyed [Dos Santos]'s intellectual property of all her original Artworks of watercolor paintings"), 34 ("trashing out the Artworks"), 71 (defendants "had to [move] all th[e] Artworks to their truck to proceed with the moving on [to the disposal site]"), 79 ("trashed out all the Artworks"); *see also* Dos Santos Decl. at 3 (defendants, in October 23, 2017 email, "clarif[ied] . . . . that they had . . . followed their proper protocol by trashing and destroying the integrity of all of my Artworks"); *id.* ("A willful act of trashing out and destroying the integrity of all Artworks is the reason for this [C]omplaint.").

Dos Santos lodged a claim with Assurant. Hoping to salvage some or all of her discarded art, Dos Santos and her husband communicated with Assurant to locate the disposal site.[2] *Id.* ¶¶ 35, 38–39. Between April 21, 2017 and October 23, 2017, Dos Santos emailed "back and forth"

---

[2] On May 11, 2017, Dos Santos also filed a police report for, *inter alia*, her property loss. Compl. ¶ 42; *id.*, Ex. D.

with Assurant. *Id.* ¶ 40. Assurant and Falcon Shield never gave Dos Santos precise information as to where and when her art had been discarded, *id.* ¶¶ 35–36. Defendants' communications instead "demonstrated a nasty attitude," *id.* ¶ 36, insisted that "trashing out" her work had been proper, and presented long-winded questionnaires to Dos Santos, *id.* ¶¶ 37, 40; *id.*, Ex. B.

On October 23, 2017, Dos Santos received the final email in the exchange, from the manager of Assurant's Claims and Litigation Department. *Id.* ¶ 41; Ex. C. It reiterated defendants' view that Assurant's contractor had "followed proper protocol as directed by the bank," that Assurant was in compliance with applicable New Jersey guidelines, that Assurant's claim denial was final, and that "there is nothing more that [Assurant] can do regarding this matter." *Id.*, Ex. C. The email reminded Dos Santos that she had been informed on the day of her eviction that the first 30 days of storage would be paid for, but that she was responsible for transferring the storage unit to her name and paying for any ongoing cost of storage. *Id.* Dos Santos denies that she had been informed of that responsibility. Compl. ¶ 41. Her Complaint alleges that, by insisting that their conduct was proper, defendants intended to induce Dos Santos to believe that she had no legal recourse. *Id.* The Complaint repeatedly pleads, however, that as early as April 19 or 20, 2017, Dos Santos was aware that her artworks had been discarded. *See id.* ¶¶ 28, 32–33, 40, *see also* Pl. Opp. at 5 (not denying defendants' representation in motion to dismiss that Dos Santos had such knowledge).

Dos Santos felt distress, "despair," and "shame" from the loss of her property. *Id.* ¶¶ 45, 51; Dos Santos Decl. at 2–3. She had "a very strong [and] persistent feeling that Defendant[s'] operation of trashing Artworks [was not] legitimate for anyone to [experience] in the United States of America." Compl. ¶ 49. She was "shocked" that defendants could so act under "the laws of the United States," which seek to "preserve property." *Id.* ¶ 51.

4

For several reasons, Dos Santos states, she did not immediately pursue litigation. First, she did not discover her legal rights because defendants' statements during the claims process that they had followed proper protocol misled her to believe she did have any such rights, *id.* ¶ 41, "[f]raudulent[ly] [c]onceal[ed]" the location where her artwork had been disposed, Dos Santos Decl. at 3, "cause[d] plaintiff to be unaware" of any further legal action, and even "afraid of" pursuing such action, *see* Compl. ¶¶ 52–55. Second, Dos Santos felt "sick" and "emotionally unstable to the point of a hospital emergency," which was exacerbated by the deaths of her father and mother in November 2018 and November 2019, respectively. Dos Santos Decl. at 2–3; Pl. Opp. at 9. Third, she thought that "she did not have what it takes" to file a lawsuit, and felt "afraid, threatened, and intimidated" based on alleged "race and disability-based mistreatment by Defendants." Compl. ¶¶ 48–49.

By January 2020, Dos Santos had become a United States citizen. Dos Santos Decl. at 3. Only then did she attain the "clarity and self-centered feelings" that enabled her to conduct legal research that led her to discover her rights. *Id.*

### B.   Procedural History

#### 1.   Dos Santos's Claims, the Court's Order to Show Cause, and Assurant's Motion to Dismiss

On July 26, 2017, Dos Santos filed the Complaint, bringing a federal claim under VARA and state tort claims. Dkt. 2. The case was assigned to the Hon. Laura Taylor Swain, United States District Judge. On August 17, 2021, the Court issued an order to show cause, *sua sponte* dismissing Dos Santos's VARA claim on the ground that the Complaint "does not show that Defendants infringed on a copyright by engaging in unauthorized copying of Plaintiff's work." Dkt. 4 ("OTSC") at 5. Further, "the facts alleged do not suggest that Defendants violated Plaintiff's right of attribution or improperly claimed authorship of her work." *Id.* The OTSC

5

directed Dos Santos to explain why the Court should not decline to exercise supplemental jurisdiction over her state-law claims in light of her failure to plead facts sufficient (1) to establish diversity jurisdiction and (2) to show that her claims were not time-barred under New York law. *Id.* at 8–9. Failure to plead that Dos Santos's citizenship was diverse from the citizenship of all defendants, the OTSC stated, would result in "dismiss[al of] Plaintiff's state-law negligence claim without prejudice." *Id.* at 9.

On December 3, 2021, Dos Santos filed a declaration responding to the OTSC. Dkt. 9 ("Dos Santos Decl."). In it, she argued that her VARA claim should be reinstated because it stated a claim under 17 U.S.C. § 106A(a)(3)(B), which provides that "[t]he author of a work of visual art" shall have the right "to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right." *Id.* at 4. She further asked the Court to exercise supplemental jurisdiction over her state law claims. *Id.* at 1. And, she argued, her state law claims were timely because (1) "[a]rt destruction has timeless implications," (2) she had been unable to discover that she had a legal cause of action until the end of 2020, due to the death of her parents, her emotional state, and an admission to the emergency room; and (3) defendants, by sending Dos Santos through a drawn-out claims process between April and October 23, 2017, fraudulently concealed that she had a cause of action.[3] *Id.* at 1–3. As to diversity of citizenship, Dos Santos's Declaration alleged only that she "ha[d] been living at the same address" in Manhattan since August 2018. *Id.* at 5.

On December 10, 2021, the case was reassigned to this Court. On December 15, 2021, the Court referred the case to Judge Lehrburger for general pretrial supervision. Dkt. 11. On

---

[3] The declaration does not specifically address the timeliness of the VARA claim. But, in recognition of Dos Santos's *pro se* status, the Court treats it as defending that claim as timely, too.

January 12, 2022, Assurant moved to dismiss, arguing that the Court lacked subject matter jurisdiction, that Dos Santos's VARA claim and state claim were time-barred, and that Assurant could not be held liable for Falcon Shield's conduct on a vicarious liability theory. Dkt. 17. On March 14, 2022, Dos Santos opposed the motion. Pl. Opp. On April 1, 2022, Assurant filed a reply. Dkt. 28.

### 2.  The Report and Recommendation

On May 13, 2022, Judge Lehrburger issued the Report. Dkt. 32. It recommends that the Court dismiss Dos Santos's federal VARA claim—and deny her corresponding motion to reinstate it—with prejudice, and dismiss her state law claims without prejudice. It bases its recommendations on the following findings.

First, the Report finds that, even though Dos Santos's Complaint is addresses to a wrong against which § 106A(3)(B) offers protection—the "intentional or grossly negligent destruction" of a work of "recognized stature"—her claim is time-barred. Report at 12–14. That is because the VARA claim's three-year limitations period began to run on April 19, 2017, the date when Dos Santos was put on notice that her paintings had been "trashed out." *Id.* at 13; *see* 17 U.S.C. § 507(b). Dos Santos filed her Complaint on July 26, 2021, more than four years later. The Report acknowledges that statute of limitations is an affirmative defense that ordinarily must be pled and proven by the defendant. Report at 13. However, the Report nonetheless recommends *sua sponte* dismissal of her VARA claim as time-barred because, "the facts supporting the statute of limitations defense are set forth in the papers plaintiff [herself] submitted." *Id.* (quoting *Walters v. Indus. & Comm. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (alteration in Report)). The Report further considers—and rejects—three arguments in favor of equitably tolling the limitations period: (1) Dos Santos's belated discovery of her legal rights; (2)

defendants' alleged fraudulent concealment of facts necessary for her to understand that her claim had accrued when it did; and (3) emotional difficulties and mental illness. *Id.* at 15–21.

Second, the Report finds that Dos Santos has not met her burden to adequately plead diversity jurisdiction. *Id.* at 21–23.

Third, the Report finds that, without a basis for original federal jurisdiction, exercising supplemental jurisdiction over Dos Santos's state-law claims would be unwarranted, and recommends dismissing these claims without prejudice. *Id.*

Fourth, the Report finds that granting Dos Santos leave to replead her claims would be futile—and recommends denying that request, too. *Id.* at 23–24.

## II.  Discussion

### A.    Applicable Legal Standards

#### 1.    Reports and Recommendations

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the Report and Recommendation

8

strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).  This is so even in the case of *pro se* plaintiffs. *See Dickerson*, 2013 WL 3199094, at *1; *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

> ### 2.      Motions Under Rule 12(b)(1)

To survive a motion to dismiss for lack of subject matter jurisdiction, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (summary order) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); and *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), but "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  *See also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may consider evidence outside the pleadings," such as affidavits and exhibits.  *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

### 3.   Motions Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court

must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the

plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See*

*Iqbal*, 556 U.S. at 678, even where, as here, the plaintiffs proceed *pro se*, *see Harris v. Mills*,

572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Pleadings that offer only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.And, in deciding a motion to dismiss, the Court may consider "the

complaint, the answer, [and] any written document attached to them . . . ." *Roberts v.*

*Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647

F.3d 419, 422 (2d Cir. 2011).

### 4.   Review of *Pro Se* Pleadings

As to all motions, a court must construe a *pro se* plaintiff's pleadings liberally.

*McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as

insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v.*

*Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202,

216 (2d Cir. 2008)). But "while a *pro se* litigant should ordinarily be afforded a substantial

degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but

not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).  For example, where a *pro se* plaintiff's submissions are "drafted with the substantial assistance of an attorney," the Court may withdraw that special solicitude. *Askins v. Metro. Transit Auth.*, No. 19 Civ. 4927 (GHW), 2020 WL 1082423, at *4 (S.D.N.Y. Mar. 5, 2020); *see also Littlejohn v. Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019) (withdrawing special solicitude where briefs had been "prepared with the assistance of the New York Legal Assistance Group Legal Clinic for Pro Se Litigants in the SDNY.").  Ultimately, "it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy*, 623 F.3d at 102.

Here, the factual components of Dos Santos's Complaint, declaration, and opposition to the motion to dismiss are in Dos Santos's voice.  They will be given special solicitude and liberally construed.  As to legal arguments in the opposition to the motion to dismiss and Dos Santos's objections to the Report, they benefited from the assistance of the New York Legal Assistance Group's Legal Clinic for *Pro Se* Litigants in the Southern District of New York.  *See* Dos Santos Decl. at 1 n.1; Pl. Opp. at 1 n.1; Pl. Obj. at 1 n.1.  Nonetheless, the Court will view these submissions, too, with extra solicitude.

### B.    Application

#### 1.    The Parties' Objections

Assurant agrees with the Report, save in one respect.  It asks that the Court dismiss Dos Santos's state-law claims with, not without, prejudice.  Def. Obj. at 1.  The Court will take up this objection at the end of this opinion.

Dos Santos makes three objections to the Report.  She asks that her VARA claim be reinstated on the ground that the statute of limitations is an affirmative defense that defendant

Assurant, not Dos Santos, "must plead and prove." Pl. Obj. at 2 (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Second, as an alternative, she asks that the Court equitably toll the statute of limitations on either of two independent grounds: that Assurant's fraudulent concealment of its wrongful conduct prevented her from timely discovering the grounds for her VARA claim; and that her mental illness and emotional instability, caused by the loss of her artworks, the distressing claims process that lasted until October 23, 2017, and the death of her parents in November 2018 and November 2019, prevented her from timely pursuing her claims. *Id.* Third, if the VARA claim is reinstated, she asks the Court to exercise supplemental jurisdiction over her state-law claims. *Id.* at 3–4. Fourth, in the event her claims are dismissed, she seeks leave to replead her claims to overcome the time bar. *Id.* at 4. She also asks that all her claims and arguments be afforded special solicitude in light of her *pro se* status. *Id.* at 1.

Although Dos Santos's objections largely reprise the arguments already considered and rejected by Judge Lehrburger—the Court, in an excess of caution, reviews those aspects of the Report *de novo*. The Court takes each of Dos Santos's objections in turn.[4]

### 2.      Time Bar to Dos Santos's VARA Claim

The Report acknowledges, and defendants do not dispute, that the initial *sua sponte* dismissal of Dos Santos's VARA claim was errant—based on a "legal oversight." Report at 12; *see* Pl. Obj.; Def. Obj. However, the Report concludes that the VARA claim is time-barred. Report at 13. The Report is correct.

---

[4] Dos Santos does not object to the Report's recommendation that, if subject matter jurisdiction is not found, the Court declines to exercise diversity jurisdiction on the ground that complete diversity is lacking between Dos Santos and defendants. In the interest of completeness, the Court nonetheless will review this recommendation.

       *i.*     Sua sponte *consideration of the time bar was proper.*

Dos Santos first objects that "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." Pl. Obj at 2 (quoting *Staehr*, 547 F.3d at 425 (citing Fed. R. Civ. P. 8(c)(1))). Accordingly, she argues, Assurant should bear the burden to show that Dos Santos's VARA claim was untimely.[5] *Id.* at 1–2.

The Report correctly responds, however, that "district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff [herself] submitted.'" Report at 13 (quoting *Walters*, 651 F.3d at 293 (alteration in Report)). The Second Circuit has repeatedly affirmed that district courts have this authority, provided that the case "has [not] proceeded *past* the point at which the defense is normally required to be raised." *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (emphasis in original). *See, e.g., Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999); *Wright v. Rensselaer Cnty. Jail*, 771 F. App'x 58, 59 (2d Cir. 2019) (summary order); *see also Graham v. HSBC Mortg. Corp.*, No. 18 Civ. 4196 (KMK), 2022 WL 1266209, at *6 (S.D.N.Y. Apr. 28, 2022). The Second Circuit has affirmed a *sua sponte* dismissal on limitations grounds even where the plaintiff was *pro se*, where the basis for such dismissal "appear[ed] on the face of the complaint." *Pino*, 49 F.3d at 52; *id.* at 53–54. Judge Lehrburger was accordingly correct, at the threshold, to consider *sua sponte* the untimeliness of Dos Santos's VARA claim.

---

[5] When the instant motion to dismiss was briefed, the OTSC's dismissal of the VARA claim was still in effect. Assurant accordingly briefed time bar arguments as to the state-law claims. It did not brief the timeliness of the VARA claim, stating only, in passing, that, were the VARA claim reinstated, it would be untimely and that Dos Santos's efforts to sustain it would be "equally [as] unavailing" as her efforts to avoid "the New York statute of limitations." Def. Mem. at 8.

          ii.      *Dos Santos's pleadings do not overcome the discovery rule.*

In her Objection, Dos Santos first argues that her limitations period has not yet expired—

or at least that the claim's untimeliness is not clear from the face of her Complaint. Pl. Obj. at 2.

She claims that she was unable to conclusively ascertain the destruction of her art because she

was not told the precise dates, times, and locations of defendants' alleged acts of destruction. Pl.

Obj. at 2. As such, she contends, it never became clear to her when her art was in fact destroyed,

and "whether some or all of Defendants' destructive acts took place within" the limitations

period. *Id.*

This argument re-raises a theory Dos Santos raised in opposition to the motion to dismiss.

*See* Pl. Opp. at 9–10. The Report discredits that theory as "speculative," insufficient to serve "as

a well-accepted allegation," and contradicted by the face of the Complaint. Report at 14–15.

The Report is correct—and Dos Santos's reprise in her Objection does not disturb the Report's

reasoning on this point.

The statute of limitations for a VARA claim is three years. 17 U.S.C. § 507(b). The

Second Circuit has adopted the so-called "discovery rule": the period "does not 'accrue' until the

copyright holder discovers, or with due diligence should have discovered, the infringement."

*Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020) (citing *Psihoyos v. John Wiley & Sons,*

*Inc.*, 748 F.3d 120, 124 (2d Cir. 2014)); *see also Parks v. ABC, Inc.*, 341 F. App'x 737, 738 (2d

Cir. 2009) (summary order) (copyright claim's three-year limitations period accrues once a

plaintiff "knows or has reason to know of the injury upon which the claim is premised" (citing

*Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); and *Stone v. Williams*, 970 F.2d 1043, 1048 (2d

Cir. 1992))).

Here, the face of the Complaint, even viewing it with the greatest solicitude, compels the

inference that Dos Santos discovered her artworks' destruction more than three years before she

filed her Complaint on July 26, 2021. The Complaint, as noted, repeatedly alleges that "all" of her artworks were destroyed in the "trashing out" operation of April 19–20, 2017. *See* Compl. ¶¶ 30, 33, 71, 79 (explicitly referring to trashing or destruction of "all" works); *id.* ¶¶ 32, 34 (referring to "the artworks" in the collective). Dos Santos's ensuing declaration and opposition to the instant motion to dismiss, which the Court treats as supplemental pleadings, reaffirmed that allegation. *See* Dos Santos Decl. at 3 (twice referring to destruction of "all" artworks); Pl. Opp. at 5 (referring to "loss of all artworks"), 13 (referring to "[d]efendant's destruction of all [artworks]"). Given these pleadings, Dos Santos's present suggestion that part or all of her artwork survived into the limitations period is contradictory—not to mention speculative and lacking any factual basis. *See* Report at 14–15 (so finding). Even for *pro se* plaintiffs, "[i]n cases 'where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading." *Wheeler v. Slanovec*, No. 16 Civ. 9065 (KMK), 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) (quoting *Brooks v. 1st Precinct Police Dep't*, No. 11 Civ. 6070 (MKB), 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014)); *see also Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10 Civ. 261 (JS) (AKT), 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (district courts have "considered prior inconsistent pleadings . . . as 'controvertible, not conclusive' admissions," but "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict[]the facts set forth in [the] original complaint" (brackets in original)); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."

(plaintiff *pro se*)); *Wallace v. N.Y. City Dep't of Corr.*, No. 95 Civ. 4404, 1996 WL 586797, at

*2 (E.D.N.Y. Oct. 9, 1996) (accepting as true facts alleged in original complaint where plaintiff

alleged directly contradictory facts in his amended complaint); *Roman v. City of Mount Vernon*,

No. 21 Civ. 2214 (KMK), 2022 WL 2819459, at *5 (S.D.N.Y. July 19, 2022) (collecting further

cases).  Even read with maximal solicitude, Dos Santos's Complaint and subsequent submissions

foreclose her present unsubstantiated allegation that some or all of her artworks were destroyed

within the limitations period.

To the extent Dos Santos's Objections suggest that she did not know until the start of the

limitations period that all her artwork had been destroyed, that assertion could not salvage her

VARA claim even if it were compatible with the statement in her pleadings that she "knew" as

of April 19, 2017 that all her works had been destroyed.  The accrual period starts from the time

"plaintiff knows *or has reason to know of the injury*." *Parks*, 341 F. App'x at 738 (emphasis

added).  A plaintiff has "reason to know of the injury" when she, "with due diligence[,] should

have discovered[] the [injury]." *Sohm*, 959 F.3d at 50.  Accordingly, by October 23, 2017, the

date of the final email communication between Dos Santos and Assurant, Dos Santos was on

notice that her artwork had been disposed of and was irretrievable to her.  But Dos Santos did not

file the Complaint until three years and nine months later.  Her VARA claim was thus untimely.

> iii.    *Dos Santos's continuous-wrong theory relies on a mistaken legal premise and is factually unsupported in any event.*

Relatedly, Dos Santos objects that she has "plausibly alleged a 'continuous wrong' theory

of VARA liability."  Pl. Obj. at 2.  Her basis for this theory is her contention that defendants

have not disclosed the precise place and time of the artworks' destruction, making it theoretically

possible that some occurred within the statutory period.  *Id.*  In the same vein, Dos Santos argued

in her declaration opposing the OTSC that "[a]rt destruction has timeless implications," and that

16

defendants' wrongful acts thus somehow continue to reverberate into the present.  Dos Santos Decl. at 1.

Dos Santos relies on a mistaken understanding of the law.[6]  "Application of the continuous wrong doctrine generally has been rejected in the infringement context." *Stone*, 970 F.2d at 1050.  Thus, the doctrine which Dos Santos invokes in defense of the timeliness of her claims is unavailable. *See id.* at 1049–50 ("Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts.").  Dos Santos's statement that the destruction of her art "has timeless implications" similarly does not find expression in the case law.

In any event, the Complaint and Dos Santos's ensuing pleadings do not identify any act of destruction within the three-year period commencing on July 26, 2018 (three years before the Complaint's filing).  On the contrary, as noted, the pleadings repeatedly aver that *all* artworks were destroyed in the "trashing out" operation of April 19–20, 2017.  Dos Santos's statement in her objections that defendants never disclosed the "dates, times, and locations" of the destruction of her property, Pl. Obj. at 2, contravenes her pleadings and cannot be credited.

Accordingly, Dos Santos has not plausibly pled conduct within the limitations period that would give rise to a timely VARA claim.

---

[6] The objection also faults the Report for relying on an "out-of-circuit case," Pl. Obj. at 2, to wit, *Hunter v. Squirrel Hill Associates L.P.*, 413 F. Supp. 2d 517 (E.D. Pa. 2005).  In fact, the Report also relied on *Khalil v. Pratt Institute*, 818 F. App'x 115 (2d Cir. 2020) (summary order) and *Carell v. Shubert Organization, Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000), for the proposition that the limitation period begins to run when a defendant *first* became aware of the facts giving rise to her legal claim. *See* Report at 14.

17

    *iv.*     *Dos Santos's belated discovery of legal redress does not satisfy the requirements for tolling.*

Dos Santos next argues that the limitations period on her VARA claim should be tolled because she did not discover she had a cause of action until late 2020. Compl. ¶ 51; Dos Santos Decl. at 2–3. For two reasons, that argument fails. First, the law is clear that a VARA cause of action accrues from the moment a plaintiff knew or should have known of the "*injury* upon which the claim is premised," *Parks*, 341 F. App'x at 738 (emphasis added), not the moment in which a plaintiff discovers that she has a viable cause of action for that injury. *See also Tomas v. Gillespie*, 385 F. Supp. 2d 240, 243 (S.D.N.Y. 2005) ("To trigger the statute of limitations, it is required only that the plaintiff knows of the facts furnishing her with a claim, not that those facts are sufficient to entitle her to relief."). And "a *pro se* litigant's ignorance of the law does not constitute an extraordinary circumstance warranting the imposition of equitable tolling." *Tipadis v. Comm'r*, 284 F. Supp. 3d 517, 524 (S.D.N.Y. 2018).

Second, even if Dos Santos's theory were viable, the Complaint belies her factual claim that she long did not understand defendants' conduct to possibly be illegal. It alleges that Dos Santos has had "a very strong and persistent feeling that Defendant's operation of trashing [a]rtworks never seemed to be legitimate," Compl. ¶ 49, and was "shocked [and] didn't ever expect" that such actions could be permissible under "the laws of the United States," *id.* ¶ 51.

There was, accordingly, no basis to toll the limitations period here from running.

    *v.*     *Defendants did not fraudulently conceal the basis for Dos Santos's VARA claim.*

Nor did defendants fraudulently conceal a cause of action from Dos Santos, as her Objections conclusorily reprise from the Complaint and supplemental declaration.

"[F]raudulent concealment of the existence of a cause of action tolls the running of the statute of limitations." *Stone*, 970 F.2d at 1048 (citation omitted). Tolling lasts "so long as the

fraud is effective." *Id.* (citation omitted). "Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if [a plaintiff] prove[s] three elements: (1) wrongful concealment by [defendant], (2) which prevented [plaintiff's] discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998); *see also Roberts v. Keith*, No. 04 Civ. 10079 (CSH), 2006 WL 547252, at *4 (S.D.N.Y. Mar. 7, 2006). These elements must be pled "with particularity." *C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 361 (E.D.N.Y. 2008).

The Court understands Dos Santos's fraudulent concealment theory to have two independent bases.

First, based on her claim to not have been told when and to where her artwork had been removed, Dos Santos asserts that she did not know for certain that, or when, her works had been destroyed. But, even under a relaxed pleading standard, these do not make out the allegations necessary to claim that defendants wrongfully concealed their destruction of her artwork. Rather, knowing of the destruction of her artworks is all Dos Santos needed to "discover[] . . . the nature of the claim within the limitations period." *In re Merrill Lynch*, 154 F.3d at 60. And even if her theory of fraudulent concealment were otherwise viable, it would factually fail on Dos Santos's pleadings, because, by October 23, 2017, the date of her last email with Assurant, she had all the information she needed to know her artworks were lost. Defendants had imposed, in other words, no further barriers to her "discover[ing] . . . the nature of the claim." *Id.*; *see also Sohm*, 959 F.3d at 50.

Second, Dos Santos suggests that defendants' insistence that they had followed "proper protocol" and New Jersey guidelines in disposing of her artworks was aimed at camouflaging

from her that she had a legal cause of action.  But that theory fails, because it does not allege that

defendants concealed the "injury," *Parks*, 341 F. App'x at 738, on which Dos Santos's VARA

claim was based.  It thus did not prevent her from "discover[ing] . . . the nature of the claim

within the limitations period." *In re Merrill Lynch*, 154 F.3d at 60.

> vi.     *Dos Santos's allegations of mental illness do not warrant tolling.*

The Report concludes that "Dos Santos's generalized descriptions of grief and mental

difficulty are insufficient to equitably toll the statute of limitations."  Report 19.  Dos Santos

summarily objects to this conclusion, Pl. Obj. 2–3, but the Report is clearly correct.

"When determining whether equitable tolling is applicable, a district court must consider

whether the person seeking application of the equitable tolling doctrine (1) has acted with

reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the

circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y. City*

*Trans. Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), *as amended* (July 29, 2003) (internal quotation

marks omitted).  The burden to make this showing is on the plaintiff, who must provide a

"particularized description of how her condition adversely affected her capacity to function

generally or in relationship to the pursuit of her rights." *Boos v. Runyon*, 201 F.3d 178, 185 (2d

Cir. 2000).  A plaintiff who fails to show a "causal connection between her mental state and the

lateness of her complaint" will not meet her burden.  *Guinyard v. Apfel*, No. 99 Civ. 4242

(MBM), 2000 WL 297165, at *4 (S.D.N.Y. Mar. 22, 2000).  "*Pro se* filings, although held to

more lenient standards, are not excused from establishing these elements." *Chalasani v. Fran*,

No. 13 Civ. 6535 (LAK) (SN), 2015 WL 2129773, at *5 (S.D.N.Y. Feb. 13, 2015) (quoting

*Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007), *report and recommendation*

*adopted*, No. 13 Civ. 6535 (LAK), 2015 WL 2137707 (S.D.N.Y. May 6, 2015).

Dos Santos's allegations, even reviewed with solicitude, do not make out extraordinary circumstances that would warrant tolling.  In an excess of caution, the Court has reviewed all of Dos Santos's allegations relating to her emotional state in her Complaint, declaration, opposition to the motion to dismiss, and objections.  Dos Santos claims that she was "in despair," Compl. ¶ 39, felt "despair and shame," *id.* ¶ 45, was "not able to be herself," *id.* ¶ 48, felt "afraid, threatened and intimidated," *id.* ¶ 49, was "scared of Defendants' acts, prepotence, wrongdoing[,] and [misleading] acts," *id.* ¶ 50, was "shocked" at defendants' acts, *id.* ¶ 51, experienced "numbness, loneliness, helplessness, despair[,] and sadness, . . . losing her enjoyment of life, the focus on her career, and the interest in pursuing happiness," *id.* ¶ 86, "felt sick, attacked, very harmed and emotionally unstable to the point of a hospital emergency room," Dos Santos Decl. ¶ 2, was in "mourning" over the loss of her artwork, and felt "grief and mourning" when her father died in November 2018, and again when her mother died in November 2019, *id.*  Dos Santos added, in her objections, that her "mental instability" resulted from defendants' wrongful acts relating to her artwork.  Pl. Obj. at 3.

Although Dos Santos's circumstances are sympathetic, her characterizations of her mental state do not describe "circumstances . . . so extraordinary" to warrant tolling.  *Zerilli-Edelglass*, 333 F.3d at 81.  She does not claim that her grief, sadness, despair, and disorientation rose to the level of, or was ever diagnosed as, a clinical condition.  Even if it had been, more would be needed to warrant equitable tolling.  *See Chalasani*, 2015 WL 2129773, at *5 (denying *pro se* plaintiff's request to toll limitation period where she "lost 20 years' worth of belongings when she was wrongfully evicted" and "claim[ed] that she suffers from major clinical depression due to"—among other things—"her father's Parkinson's disease and serious renal failure and her sister's death in the terrorist attacks on the World Trade Center on September 11, 2001[ and her]

depression [which] led her to take a nearly month-long leave of absence from [her employer]
before she was fired"); *Mulkern v. N. Y. State Police*, No. 08 Civ. 8870 (HB) (LMS), 2010 WL
5584598, at *11 (S.D.N.Y. Dec. 8, 2010) (concluding that *pro se* plaintiff's "mental disabilities
including PTSD, depression, anxiety, and alcoholism" did not satisfy equitable tolling standard,
because there was no suggestion "that these disabilities resulted in an 'overall inability to
function in society' or rendered [the plaintiff] unable to understand or protect his legal rights"
(internal quotations omitted)), *report and recommendation adopted*, No. 08 Civ. 8870 (HB)
(LMS), 2011 WL 135001 (S.D.N.Y. Jan. 13, 2011); *Apionishev v. Colum. Univ.*, No. 09 Civ.
6471 (SAS), 2011 WL 1197637, at *6 (S.D.N.Y. Mar. 25, 2011) (holding that *pro se* plaintiff's
"[h]omelessness and depression or illness alone [were] not sufficient to justify equitable
tolling"). Dos Santos's loss of her parents also does not justify tolling. *See Gager v. Principi*,
300 F. App'x 30, 30 (2d Cir. 2008) (summary order) (*pro se* plaintiff's claims that she "lost track
of time and dates due to deaths in her family and her father's illness" did not warrant equitable
tolling); *Ferrer v. Potter*, No. 03 Civ. 9113 (AJP), 2005 WL 1022439, at *8 (S.D.N.Y. May 3,
2005) (*pro se* plaintiff's father's death and ensuing psychological problems provided insufficient
reason for equitable tolling); *Brundin v. United States*, No. 95 Civ. 2689 (WK), 1996 WL 22370,
at *5 (S.D.N.Y. Jan. 19, 1996) ("Although the [*pro se*] plaintiff does supply an excuse for the
delay—the unexpected death of her father—this reason alone does not warrant equitable
tolling."). Finally, Dos Santos's hospitalization does not warrant tolling. *See Dziedzic v. State
Univ. of N. Y. at Oswego*, No. 10 Civ. 1018 (FJS) (DEP), 2014 WL 7331926, at *3–4 (N.D.N.Y.
Dec. 19, 2014) (equitable tolling denied where *pro se* plaintiff failed to show how a "lengthy
medical leave period, which included hospitalization for anxiety and depression" caused her to
file complaint late) (collecting cases), *aff'd*, 648 F. App'x 125 (2d Cir. 2016) (summary order).

The Court accordingly adopts the Report's recommendation that equitable tolling be denied on account of Dos Santos's mental health challenges.[7]

### 3.    Diversity Jurisdiction

The Court next considers whether—with the VARA claim eliminated—subject matter jurisdiction can be founded on diversity jurisdiction. It cannot.[8]

"[D]iversity jurisdiction exists over civil actions (1) between 'citizens of different States' and (2) between 'citizens of a State and citizens or subjects of a foreign state,'" *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (quoting 28 U.S.C. § 1332), provided that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). For a state to be a person's domicile requires physical presence in the state and an intention to remain there indefinitely. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). A corporation is a citizen of its state of incorporation and of its principal place of business. That principal place of business "should normally be the place where the corporation maintains its headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

Dos Santos has not pled, or shown, that she is diverse from Assurant. The Complaint alleges—and Assurant does not dispute—that its headquarters are in New York. Compl. ¶ 11. It further alleges that Dos Santos "is a resident and citizen of New York." *Id.* ¶ 10. There are no

---

[7] Independently, the Court adopts the Report's finding that Dos Santos has not pled with particularity her mental health conditions or how they thwarted a timely filing. *Boos*, 201 F.3d at 185 (plaintiff ineligible for equitable tolling where she did not make "a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights").

[8] Although Dos Santos's Objections did not reprise this argument, the Court has independently assessed this issue, as it bears on the question whether to exercise supplemental jurisdiction.

contrary allegations.  Dos Santos thus fails to carry her burden to plead subject matter

jurisdiction.  *Giammatteo*, 452 F. App'x at 27.

### 4.     Supplemental Jurisdiction Over State-Law Claims

Federal district courts have supplemental jurisdiction over state-law claims "that are so

related to claims in the action within [the courts'] original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution."  28 U.S.C. §

1367(a).  But "such jurisdiction is discretionary," *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d

359, 393 (S.D.N.Y. 2013) (citing *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173

(1997)), and "a district court 'may decline to exercise supplemental jurisdiction' if it 'has

dismissed all claims over which it has original jurisdiction,'" *id.* (quoting 28 U.S.C. §

1367(c)(3)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims."  *Sefovic v. Mem'l Sloan Kettering Cancer Ctr.*, No. 15 Civ. 5792

(PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting *Carnegie-Mellon Univ. v.

Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.

1998) ("In general, where the federal claims are dismissed before trial, the state claims should be

dismissed as well.").

Such is the case here.  With the Court's having found Dos Santos's federal claim time-

barred, and diversity jurisdiction lacking, the only conceivable basis for jurisdiction over Dos

Santos's state-law claims would be the discretionary one of supplemental jurisdiction.  Declining

to exercise such jurisdiction at this early stage is warranted because "[t]he Court has not invested

the judicial resources necessary to resolve [the] non-federal claims" or determined whether the

Complaint even adequately pleads them.  *Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905

(PAE), 2020 WL 3619505, at *12 (S.D.N.Y. July 2, 2020). For such reasons, this Court and others have repeatedly declined to exercise supplemental jurisdiction after dismissing all federal claims. *See, e.g.*, *Cromwell v. N.Y. City Health & Hosps. Corp.*, No. 12 Civ. 4251 (PAE), 2013 WL 2099252, at *5 (S.D.N.Y. May 15, 2013) (declining to exercise supplemental jurisdiction on similar grounds after dismissing federal claims); *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 453, 456 (S.D.N.Y. 2014) (same), *aff'd*, 615 F. App'x 689 (Fed. Cir. 2015) (summary order); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (same); *Harmon v. N. Y. Cnty. Dist. Att'y's Off.*, No. 13 Civ. 1711 (PAE), 2014 WL 1044310, at *11 (S.D.N.Y. Mar. 17, 2014) (same); *TRB Acquisitions LLC v. Yedid*, No. 20 Civ. 552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (after dismissal of federal claim, "the traditional values of judicial economy, convenience, fairness, and comity that the Court must consider [did] not counsel in favor of exercising jurisdiction" (internal quotation marks omitted)); *DCR Mktg. Inc. v. Pereira*, No. 19 Civ. 3249 (JPO), 2020 WL 91495, at *3 (S.D.N.Y. Jan. 8, 2020) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Cohill*, 484 U.S. at 350 n.7)).

The Court accordingly adopts the Report's recommendation not to exercise supplemental jurisdiction over Dos Santos's state law-claims.

### 5. Dismissal of State-Law Claims Without Prejudice

In its only objection to the Report, Assurant asks that Dos Santos's state-law claims be dismissed *with prejudice*. Def. Obj. at 7–8. It makes two arguments. First, it notes, the OTSC entered by Judge Swain observed that the state-law claims "appear[ed] to be time-barred," OTSC at 7, and rejected tolling the limitations period based on New York C.P.L.R. § 208 or equitable tolling. Def. Obj. at 7–8. Second, the New York limitations period, like the federal one, is three

years, and its equitable tolling is subject to a standard "substantially similar to the federal [one]," Def. Obj. at 8 (quoting *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 374 n.4 (E.D.N.Y. 2012)), if not a "less liberal" standard, *id.* (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 84–85 (2d Cir. 2002)).  As such, Assurance argues, it would be "pointless" to allow Dos Santos to refile those claims in a New York court.  *Id.* at 7.

Assurant's first argument overstates the OTSC.  It did not decline to toll Dos Santos's state claims or dismiss them, but instead set out examples of grounds on which courts have found equitable tolling warranted.  OTSC at 7–8.  It thus identified theories that might enable Dos Santos to salvage her state claims.  It did not "carefully consider[] and reject[] the possibility of tolling," or "couch[]" such a determination "in nonbinding language" Def. Obj. at 8.  Neither the OTSC nor this decision thus has durably evaluated whether Dos Santos's state claims are salvageable.

Assurant's second argument—that New York's standard for equitable tolling is no more favorable to Dos Santos than the federal one—has also not been established in this litigation. The OTSC, Dos Santos's opposition to dismissal, and Assurant's own objections to the Report together identify possible bases for tolling the limitations period outside of those the Court here has addressed under federal law: N.Y. C.P.L.R. § 204, N.Y. C.P.L.R. § 208, and the pandemic-related tolling of state-law claims pursuant to New York Executive Orders 8.202.8 and 8.202.72, *see* 9 N.Y.C.R.R. 8.202.8, 9 N.Y.C.R.R. 8.202.72.  *See* OTSC at 7–8; Pl. Opp. at 9–10, Def. Obj. at 8.  Should she choose to do so, Dos Santos is entitled to refile her state claims in state court and attempt to show that they are timely.

### 6.    Denial of Leave to Replead VARA Claim

Dos Santos finally seeks leave to replead in this Court—specifically, to bolster her claim for equitable tolling of her federal claim.  Pl. Obj. at 4.  The Court denies Dos Santos's request as futile.

The Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 71 (2d Cir. 1996); *see also Armstrong v. McAlpin*, 699 F.2d 79, 93–94 (2d Cir. 1983) (district court did not abuse discretion in refusing fourth attempt to replead); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("In cases where such leave has not been granted, plaintiffs have usually already had one opportunity to plead [a claim] with greater specificity[.]" (collecting cases)).

Dos Santos was thrice put on notice that she could attempt to toll the statute of limitations by pleading facts sufficient to establish a qualifying mental illness or disability: first, by the OTSC issued by Judge Swain, *see* OTSC at 7 (citing *Gardner v. Wansart*, No. 05 Civ. 3351 (SHS), 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006)), for the proposition that "although mental illness is on its own insufficient for equitable tolling purposes, tolling is appropriate if a plaintiff is insane at the time the cause of action accrues and is 'unable to protect [his] legal rights because of an overall inability to function in society'"); next, in Assurant's motion to dismiss, Dkt. 17 at 6 (arguing that Dos Santos's justification of being "'scared' and in 'shock'" do not qualify as "compelling circumstances prevent[ing her] from timely filing her complaint"); and then in the Report, *see* Report at 19 ("Ms. Dos Santos's generalized descriptions of grief and mental difficulty are insufficient to equitably toll the statute of limitations[.]").  In each responsive filing, Dos Santos had the assistance of counsel.  *See* Dos Santos Decl. at 1 n.1; Pl. Opp. at 1 n.1; Pl. Obj. at 1 n.1.  Yet Dos Santos's submissions—

including, most recently, her objections—failed to recite facts meeting that burden, or even plead the verified existence of a mental illness.

In these circumstances, it is highly unlikely—and the Court has not been given a reason to expect—that concrete facts could be pled now sufficient to satisfy the demanding standard for equitable tolling.[9] The Court accordingly denies Dos Santos's VARA claim with prejudice. *See Siclari v. N.Y. City Dep't of Educ.*, No. 19 Civ. 7611 (AJN), 2020 WL 7028870, at *10 (S.D.N.Y. Nov. 30, 2020) (denying leave to file second amended complaint where "Plaintiff was put on notice by Defendant's original motion to dismiss as to the deficiencies of her arguments, and her amended complaint did not cure any of the defects"); *Onibokun v. Chandler*, No. 16 Civ. 1357 (AMD) (LB), 2017 WL 9487196, at *6 (E.D.N.Y. June 23, 2017), *report and recommendation adopted sub nom. Onibokun v. Stringer*, No. 16 Civ. 1357 (AMD) (LB), 2017 WL 6596612 (E.D.N.Y. Dec. 26, 2017), *aff'd sub nom. Onibokun v. Chandler*, 749 F. App'x 65 (2d Cir. 2019) (summary order).

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Lehrburger's May 13, 2022 Report and Recommendation in its entirety. Assurant's motion to dismiss is granted, save that Dos Santos's state-law claims are dismissed without prejudice. Dos Santos is at liberty to pursue these in state court.

The Clerk of Court is respectfully directed to terminate all pending motions, to mail a copy of this order to Dos Santos at her address of record, and to close this case.

---

[9] This is especially so considering the robust showing required to plead a cognizable mental illness and Dos Santos's anemic allegations to that effect thus far.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: September 1, 2022
        New York, New York